**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **ANGELA BIRKMAN, individually and** | § | |
| **on behalf of all similarly situated** | § | |
| **persons,**        **PLAINTIFF** | § | |
| | § | |
| **v.** | § | **C.A. No.:**     **1:16-cv-401** |
| | § | |
| **L.L.C., INC. d/b/a PERFECT 10 MEN'S** | § | |
| **CLUB,**        **DEFENDANT.** | § | |

## DEFENDANT'S MOTION TO DISMISS AND TO COMPEL ARBITRATION

L.L.C., Inc. d/b/a Perfect 10 Men's Club ("Defendant" herein), hereby moves the Court to dismiss Plaintiff Angela Birkman's ("Plaintiff") claims and to compel the arbitration, or alternatively, stay this proceeding pending referral to and determination by binding arbitration.

1.       On or about 3/23/16, Plaintiff filed suit against Defendant in the United States District Court for the Western District of Texas Austin Division. A copy of Plaintiff's Complaint and Demand for Jury Trial (the "Complaint") in the state court action is attached hereto as Exhibit A.

2.       The Complaint alleges, among other things, that: i) Defendant has failed to pay Plaintiff overtime compensation in violation of the Fair Labor Standards Act; ii) Defendant has failed to pay Plaintiff minimum wage in violation of the Fair Labor Standards Act; and iii) Plaintiff seeks and is entitled to a jury trial.

3.       Plaintiff is precluded from prosecuting this suit in this Court because Plaintiff is bound by her agreement requiring her to arbitrate her claims. Plaintiff executed that certain Independent Contractor Agreement (referred to herein as the "Agreement" and attached hereto as Exhibit B) which requires Plaintiff to arbitrate her claims against Defendant. The Federal Arbitration Act 9 U.S.C. § 1 et seq (the "FAA") governs and requires enforcement of the

agreements to arbitrate and preempts inconsistent state law. The FAA represents a strong federal policy in favor of arbitration, and Plaintiff's claims are within the scope of the parties' agreement to arbitrate.

## ARGUMENT

## I. THE SPECIFIED PLAINTIFF'S CLAIMS ARE SUBJECT TO ARBITRATION

4. The FAA states that a written agreement "to settle by arbitration a controversy" arising out of a contract or transactions "shall be valid, irrevocable, and enforceable, save upon each such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

5. The FAA "reflects a liberal federal policy favoring arbitration agreements." **Gilmer v. Interstate/Johnson Lane Corp.,** 500 U.S. 20, 35 (1991) (citing **Mitsubishi Motors Corp. v. Soler Crysler-Plymouth, Inc.,** 473 U.S. 614, 626-627 (1985)). *See also* **Moses H. Cone Memorial Hosp. v. Mercury Construction Co.,** 460 U.S. 1, 24-25 (1983).

> The Supreme Court has noted that the purpose of the FAA is "to reverse the longstanding judicial hostility to arbitration and agreements … and to place [them upon the same footing as other contracts. **Green Tree Fin. Corp.-Ala. V. Randolph,** 531 U.S., 89 [ ] (200) (quoting **Gilmer** [ ], 500 U.S. [at] 24 [ ]). Accordingly there is a strong presumption in favor of arbitration and a party seeking to invalidate an arbitration agreement *bears the burden of establishing its invalidity.* **Gilmer,** 500 U.S. at 26 [ ].

**Carter v. Countrywide Credit Industries, Inc.,** 362 F.3d 294, 297 (5th Cir. 2004) (emphasis added) (also noting "that individuals seeking to avoid enforcement of an arbitration agreement *face a high bar*") (emphasis added). *See also* **First Option of Chicago, Inc. v. Kaplan**, 514 U.S. 938, 945 (1995) (under the FAA, "*any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration*") (emphasis added).

6.The FAA is the supreme law of the land regarding an arbitration clause in any agreements "affecting commerce," and "provides 'for the enforcement of arbitration agreements within the

full reach of the commerce clause.'" **Citizens Banks v. Alafabco, Inc.,** 539 U.S. 52, 56 (2003) (quoting **Perry v. Thomas**, 482 U.S. 483, 490 (1987)) (other citation omitted). *See also* **Sentry Systems, Inc. v. Guy,** 98 Nev. 507, 509, 654 P.2d 1008, 1009 (1982). "The FAA preempts any contradictory provision of state law." **Stutler v. T.K. Contractors**, 484 F.3d 343, 345 (6th Cir. 2006) (citing **Circuit City Stores v. Adams**, 532 U.S. 105, 111-112 (2001)). More specifically, "Federal law preempts state law on issues of arbitrability." **Three Valleys Municipal Water District v. E.F. Hutton & Co., Inc.**, 925 F.2d 1136, 1139 (9th Cir. 1991) (citing **Moses H. Cone**, 460 U.S. at 24).

7. Determining whether a claim is subject to arbitration is a two-step process. "First the court must determine whether the parties agreed to arbitrate the dispute. Once the court finds that the parties agreed to arbitrate, it must consider whether any federal statute or policy renders the claims nonarbitrable." **Washington Mut. Fin. Group, LLC v. Bailey**, 364 F.3d 260, 263 (5th Cir. 2004).

8. To determine whether the parties agreed to arbitrate the dispute at issue, the court must consider whether a valid agreement to arbitration exists among the parties and whether the dispute is within the scope of the arbitration agreement. Webb v. Investacorp, Inc., 89 F.3d at 258 (5th Cir. 1996). In making this determination, the court should generally apply "*ordinary state-law principles that govern the formation of contracts*," but must also give due regard to the federal policy favoring arbitration, and it must resolve any ambiguities as to the scope of the arbitration clause itself in favor of arbitration. *Id.*

9. Under Texas law, a party who seeks to compel arbitration has the initial burden to establish the existence of an arbitration agreement and to show that the asserted claims fall within its scope. *See* Wachovia Sec. LLC v. Emery, 186 S.W.3d 107, 113 (Tex. App. – Houston [1st.

Dist.] 2005, no pet.). The burden then shifts to the party opposing arbitration to present evidence showing why the arbitration agreement should not be enforced. *See id*. The party opposing arbitration may show, for example, that the arbitration agreement was procedure in an unconscionable manner, or induced or procured by fraud or duress. *See In re FirstMerit Bank, N.A.*, 52 S.W. 3d 749, 756 (Tex. 2001).

10. There can be no dispute that in this case the Plaintiff agreed to arbitrate the claims raised in Plaintiff's Complaint. The Independent Contractor/Entertainer Agreement that Plaintiff executed provides that:

> **A.     ANY CONTROVERSY, DISPUTE, OR CLAIM ARISING OUT OF ENTERTAINER OR EMPLOYEE WORKING OR PERFORMING AT THE CLUB WFKR RESTAURANTS, SHALL BE EXCLUSIVELY DECIDED BY BINDING ARBITRATION HELD PURSUANT TO THE FEDERAL ARBITRATION ACT (THE "FAA")... THE PARTIES WAIVE ANY RIGHT TO LITIGATE SUCH CONTROVERSIES, DISPUTES, OR CLAIMS IN A COURT OF LAW AND WAIVE THE RIGHT TO TRIAL BY JURY... THE ARBITRATOR'S DECISION SHALL BE FINAL, SUBJECT ONLY TO REVIEW UNDER THE FAA...**

> **...**

> **C.     ENTERTAINER OR EMPLOYEE AGREES THAT ALL CLAIMS BETWEEN HIM/HER AND THE CLUB (AND ANY OTHER PERSONS OR ENTITES ASSOCIATED WITH THE CLUB) WILL BE LITIGATED INDIVIDUALLY; THAT HE/SHE WILL NOT CONSOLIDATE HER CLAIMS WITH THE CLAIMS OF ANY OTHER INDIVIDUAL; THAT THEY WILL NOT SEEK CLASS OR COLLECTIVE ACTION TREATMENT FOR ANY CLAIM THAT HE/SHE AMY HAVE; AND THAT HE/SHE WILL NOT PARTICIPATE IN ANY CLASS OR COLLECTIVE ACTION AGAINST THE CLUB OR AGAINST ANY PERSONS OR ENTITIES ASSOCIATED WITH THE CLUB...**

11. Plaintiff claims to have been injured in the course and scope of her employment with Defendant WFKR. Plaintiff's claims, therefore, are clearly within the scope of the agreement to arbitrate.

## II. ANY CHALLENGES TO THE ARBITRATION AGREEMENT AS A WHOLE MUST BE DECIDED DURING ARBITRATION

12.     There are two types of challenges to an arbitration provision: (1) a specific challenge to the validity of the arbitration agreement or clause, and (2) a broader challenge to the entire contract, either on a ground that directly affects the entire agreement, or on the ground that one of the contract's provisions is illegal and renders the whole contract invalid. **In re Labatt Food Services, L.P.**, 579 S.W.3d 640, 647-648 (Tex. 2009) citing **Buckeye Check Cashing, Inc. v. Cardega**, 546 U.S. 440, 444 (2006)).

13.     A court may consider narrow challenges to the arbitration clause itself, but "a challenge to the validity of the contract as a whole … must go to the arbitrator." **Id**. at 648 (citing **Prima Pant Corp. v. Flood & Conklin Mfg. Co.**, 388 U.S. 395, 403-404 (1967)). *See also* **Buckeye**, 546 U.S. at 445-446 ("… unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance"). To the extent, therefore, that the Plaintiff raises challenges relating to the validity of the entire Agreement, those issues must also be decided referred to the arbitrator.

## III. ANY UNENFORCEABLE PROVISION IS SEVERABLE FROM THE AGREEMENT TO ARBITRATE.

14.     In the unlikely event a provision of the agreement to arbitrate is deemed unenforceable, the court should simply strike the provision and enforce the agreement. Issues pertaining to the validity, revocability, and enforceability of an arbitration agreement are decided according to state law pertaining to contracts generally. **Doctor's Associates, Inc., v. Casarotto**, 517 U.S. 681, 686-687 (1996) (citing **Perry v. Thomas**, 482 U.S. 483, 492 n. 9 (1904)); 9 U.S.C. § 2.

15.     In **In re Poly-America, L.P.**, 262 S.W.3d 337 (Tex. 2008), the Texas Supreme Court applied general contract principles to determine that unconscionable provisions in an arbitration agreement do not render the entire agreement unenforceable. The Court began by recognizing that "[a]n illegal or unconscionable provision of a contract may generally be served as long as it does not constitute the essential purpose of the agreement." **Id**. at 360. Hence, the "relevant injury is whether or not the parties would have entered into the agreement absent the unenforceable provisions." **Id**.

16.     The Court went on to determine that the remedies limitation provision at issue was severable and did not defeat the agreement to arbitrate. Nonetheless, the **In re Poly-America** court recognized that the "main purpose of the agreement is to submit their disputes to an arbitral forum rather than proceed in court." **Id.** Such is axiomatically the central purpose of any agreement to arbitrate, including the one at bar. The parties have agreed to arbitrate and their agreement must be enforced.

## IV.     PLAINTIFF CANNOT CLAIM THAT DEFENDANT HAS WAIVED ITS RIGHT TO ARBITRATE

17.     Plaintiff cannot now claim WFKR waived its right to compel arbitration or that she has suffered any sort of prejudice. Defendant put Plaintiff on notice of its intent to compel arbitration immediately in its first response to Plaintiff's Complaint.

18.     "There is a strong presumption against finding a waiver of arbitration, and the party claiming that right to arbitrate has been waived ***bears a heavy burden***." **Republic Inc. Co. v. PAICO Receivables, LLC**, 33 F.3d 341, 344 (2004) (citing **Subway Equip. Leasing Corp. v. Forte**, 169 F.3d 324, 326 (5th Cir. 1999)). "The [FAA] established that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or ***an allegation of***

*waiver, delay, or a like defense to arbitrability*." **Moses H. Cone**, 460 U.S. at 24-25 (emphasis added).

19.     The Fifth Circuit has been extremely hesitant to find a waiver of the right to arbitration, stating, "in one of the few cases in which we have recognized a party's waiver of the right to arbitrate, we found that the party had 'demonstrated a clear and unmistakable "disinclination" to arbitrate' to 'substantial detriment and prejudice' of the other party…" **Gulf Gaur. Lif Ins. Co. v. Connecticut Gen, Life Ins.**, 304 F.3d 476, 484 (5ᵗʰ Cir. 2002) (quoting **Miller Brewing Co. v. Fort Worth Distrib. Co., Inc.**, 781 F.2d 494, 497 (5ᵗʰ Cir. 1986)). That situation included "the bringing of a state court suit that did *not* 'rely or *even mention* the arbitration clause, and where the parties did not attempt to schedule an arbitration hearing until almost *three years later*." **Id**. (emphasis added) (quoting **Miller Brewing**, 781 F.2d at 497).

20.     However, "mere delay falls far short of the waiver requirements…" [**Texaco Exploration & Prod. Co. v. AmClyde Engineered Prods. Co., Inc.**, 243 F.3d 906, 911 (5ᵗʰ Cir. 2001)] (citing **Subway**, for example, this court rejected a claim of waiver even where it was alleged a party sough related judicial bankruptcy proceeding involving issues separate from the arbitration in the affirmative attempt to delay that arbitration. *See* 169 F.3d at 329. Similarly, in **Texaco Exploration**, this court rejected a claim of waiver based on a party's seeking litigation of another dispute with the same opposing party that was separate for the arbitratable dispute, even were this court recognized that the unrelated litigation had the effect of delaying the arbitration and narrowing its scope. 243 F.3d at 911-12. This court has further recognized that, even where a party takes substantial steps toward litigation of the arbitral dispute, or participates substantially in litigation procedures, it ordinarily will not waive the right to arbitrate. *See* **Tenneco Resins, Inc., v. Davy int'l, AG**, 770 F.2d 416, 420-21 (5ᵗʰ Cir. 1985) (collecting cases). In **Tenneco**, for

example, this court found that a party had not waived its right to arbitrate when it waited "almost eight months before moving that the district court proceeding be stayed pending arbitration, and in the meantime participated in discovery." **Id**. This court noted that "this and other court have allowed such actions as well as considerably more activity without finding that a party has waived a contractual right to arbitrate." **Id**. at 421 (citing **Southwest indus. Imports & Export, Inc. v. Wilmod Co., Inc.**, 524 F.2d 468 (5th Cir. 1975)); *see also* **Gen. Gaur. Ins. Co. v. New Orleans Gen. Agency Inc.**, 427 F.2d 924, 928-29 (5th Cir. 1970) (finding no waiver although a party filed an answer to a court claim denying liability and filed counterclaims, as well as attempted to implead parties and allowed taking of two depositions before demanding arbitration). **Id**.

21.     Defendant has not taken any actions which demonstrate a desire not to arbitrate Plaintiff's claims.  Rather, Defendant promptly put Plaintiff on notice of Defendant's intent to arbitrate Plaintiff's claims, and have only taken those actions necessary to defend against Plaintiff's claims. The Plaintiff cannot claim either waiver or prejudice, and Plaintiff's claims must be dismissed or referred to arbitration.

## V.     THE PLAINTIFF'S CLAIMS SHOULD BE DISMISSED

22.     Upon finding that a party's claims must proceed to arbitration, a court has two choices. It may stay the action pending arbitration, or it may dismiss the claims.  Movant requests that the Court dismiss Plaintiff's claims.

23.     Section 3 of the FAA provides that a court, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall upon application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Thus, "a stay is mandatory upon showing that the opposing party has commenced suit upon any issue referable to arbitration under

an agreement in writing for such arbitration." **Fedmet Corp. v. M/V Buyalyk,** 194 F.3d 674, 678 (5th Cir. 1999) (quoting **Alford v. Dean Witter Reynolds, Inc.,** 975 F.2d 1161, 1164 (5th Cir. 1992)).

24.     The Fifth Circuit has concluded that 9 U.S.C. § 3 allows the court to dismiss a case "in proper circumstances." **Id.** (quoting **Alford,** *supra*).  The Fifth Circuit has held that dismissal is appropriate "*when all of the issues raised in the district court must be submitted to arbitration*." Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cr. 1992).

25.     Clarity and judicial economy favor dismissing the Plaintiff's claims. All of the Plaintiff's claims are subject to arbitration.  Further, a deferential review of an arbitrator's award in the same case where the same issues are to be decided in the first instance would simply be confusing and disruptive. Defendant, therefore, respectfully request that this Court dismiss Plaintiff's claims, without prejudice, with instruction that they seek arbitration under the terms of their agreement to arbitrate. In the alternative, Defendant request that Plaintiff's claims be stayed pending the outcome of the arbitration.

## CONCLUSION

WHEREFORE, Defendant respectfully requests this Court enter orders dismissing the Plaintiff's claims without prejudice and directing Plaintiff to pursue arbitration. In the alternative, Defendant requests the Court stay the proceedings on the Plaintiff's claims and direct Plaintiff to pursue arbitration. In the alternative, Defendant requests the Court stay the proceedings on the Plaintiff claims pending the outcome of arbitration.

Respectfully submitted,

BRIAN W. BISHOP
900 West Avenue
Austin, Texas 78701
Telephone: (512) 327-5121
Facsimile: (512) 327-5122
Email:  brian@bbishoplaw.com
ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

I certify that a true copy of the above was served electronically on the attorney of record or party in accordance with the Federal Rules of Civil Procedure on 4/22/16.

Charles L. Scalise
Daniel B. Ross
Ross Law Group
1104 San Antonio St.
Austin, TX 78701
Charles@rosslawpc.com

Brian W. Bishop

Case 1:16-cv-00401  Document 1  Filed 03/23/16  Page 1 of 10

IN THE UNITED STATES DISTRICT COUR
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

ANGELA BIRKMAN, individually and
on behalf of all similarly situated persons,

 Plaintiff,

v.            C.A. No.: 1:16-cv-401

L.L.C., INC., d/b/a PERFECT 10 MEN'S CLUB,

 Defendant.

              /

## COMPLAINT AND DEMAND FOR JURY TRIAL

  Plaintiff, ANGELA BIRKMAN (hereinafter sometimes referred to as "Plaintiff"), and others similarly situated, by and through her undersigned counsel, hereby sues Defendant, L.L.C., INC., d/b/a PERFECT 10 MEN'S CLUB (hereinafter sometimes referred to as "Defendant"), and in support thereof states as follows:

## INTRODUCTION

 1. This is a collective action by Plaintiff, and others similarly situated, against her employers for unpaid wages pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. § 201, *et seq.* Plaintiff seeks damages for unpaid overtime, liquidated damages, injunctive relief, declaratory relief, and a reasonable attorney's fee and costs.

EXHIBIT A

## JURISDICTION

2.    This claim is properly before this Court pursuant to 28 U.S.C. § 1331,

since this claim arises under federal law, and by the private right of action conferred

in 29 U.S.C. § 216(b).

## VENUE

3.    Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because

Defendant, L.L.C., INC., d/b/a PERFECT 10 MEN'S CLUB, has offices located in

Austin, Texas.

## THE PARTIES

4.    Plaintiff is an individual residing in Austin, Texas.

5.    Plaintiff, ANGELA BIRKMAN, was employed by Defendant from

October of 2013, through February of 2016, as an "Entertainer/Dancer."

6.    Defendant, L.L.C., INC., d/b/a PERFECT 10 MEN'S CLUB, is a

corporation formed and existing under the laws of the State of Texas and maintains

offices in Austin, Texas.

7.    Defendant, L.L.C., INC., d/b/a PERFECT 10 MEN'S CLUB, operates

a company primarily engaged in adult entertainment industry and is an employer as

defined by 29 U.S.C. § 203(d).

Case 1:16-cv-00401  Document 1  Filed 03/23/16  Page 3 of 10

8.      Defendant, L.L.C., INC., d/b/a PERFECT 10 MEN'S CLUB, has employees subject to the provisions of 29 U.S.C. § 206 in the facility where Plaintiff was employed.

9.      At all times material to this complaint, Defendant, L.L.C., INC., d/b/a PERFECT 10 MEN'S CLUB, employed two or more employees and had an annual dollar volume of sales or business done of at least $500,000.00.

10.     At all times material to this complaint, Defendant, L.L.C., INC., d/b/a PERFECT 10 MEN'S CLUB, was an enterprise engaged in interstate commerce, operating a business engaged in commerce or in the production of goods for commerce as defined by § 3(r) and 3(s) of the Act, 29 U.S.C. §§ 203(r)-(s).

11.     Plaintiff was misclassified by the Defendant as an independent contractor; therefore, was paid no wages whatsoever.

12.     Defendant either knew about or showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA and failed to act diligently with regard to its obligations as employers under the FLSA.

13.     Defendant failed to act reasonably to comply with the FLSA, and so Plaintiff, and all others similarly situated, are entitled to an award of liquidated damages in an equal amount as the amount of unpaid wages deemed to be owed pursuant to 29 U.S.C. § 216(b).

14. As a result of Defendant's unlawful conduct, Plaintiff, and all others similarly situated, are entitled to actual and compensatory damages, including the amount of minimum wages and/or overtime which was not paid that should have been paid.

15. Plaintiff, and all others similarly situated, is entitled to an award of reasonable and necessary attorneys' fees, costs, expert fees, mediator fees and out-of-pocket expenses incurred by bringing this action pursuant to 29 U.S.C. § 216(b) and Rule 54(d) of the Federal Rules of Civil Procedure.

16. Pending any modifications necessitated by discovery, Plaintiff preliminarily defines this Class as follows:

ALL CURRENT OR FORMER EMPLOYEES OF L.L.C., INC., D/B/A PERFECT 10 MEN'S CLUB, WHO WERE EMPLOYED AS AN ENTERTAINER/DANCER THROUGHOUT THE STATE OF TEXAS AND WHO WERE DESIGNTED AS INDEPENDENT CONTRACTORS AND WERE PAID NO WAGES.

17. This action is properly brought as a collective action for the following reasons:

a. The Class is so numerous that joinder of all Class Members is impracticable.

b. The claims asserted by Plaintiff are typical of the claims of Class Members and the Class is readily ascertainable from L.L.C., INC., d/b/a PERFECT 10 MEN'S CLUB's own records. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

Case 1:16-cv-00401 Document 1 Filed 03/23/16 Page 5 of 10

### Page 5 of 10

c. Plaintiff will fairly and adequately protect the interests of Class Members. The interests of Class Members are coincident with, and not antagonistic to, those of Plaintiff. Furthermore, Plaintiff is represented by experienced class action counsel.

d. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members which would establish incompatible standards of conduct for L.L.C., INC., d/b/a PERFECT 10 MEN'S CLUB.

e. The prosecution of separate actions by individual Class Members would create a risk of adjudications with respect to individual Class Members which would, as a practical matter, be dispositive of the interests of the other Class Members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

e. L.L.C., INC., d/b/a PERFECT 10 MEN'S CLUB acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

18. For the foregoing reasons, Plaintiff seeks certification of an FLSA "opt-in" collective action pursuant to 29 U.S.C. §216(b) for all claims asserted by Plaintiff because her claims are nearly identical to those of other Class Members. Plaintiff and Class Members are similarly situated, have substantially similar or identical job requirements and pay provisions, and are subject to Defendant's common practice, policy or plan regarding employee wages and hours.

19. In addition to the named Plaintiff, numerous employees and former employees of Defendant are similarly situated to Plaintiff in that they have been

Case 1:16-cv-00401 Document 1 Filed 03/23/16 Page 6 of 10

denied overtime compensation while employed by Defendant.

20. Defendant's policy of not paying minimum wage or overtime is company-wide and "Entertainer/Dancers" employed by Defendant during the three years prior to the filing of this action have been deprived of minimum wage and overtime, similarly to the Plaintiff.

21. Plaintiff is representative of these other employees and is acting on behalf of their interests as well as Plaintiff's own interests in bringing this action.

22. Plaintiff has retained the law firm of Ross Law, P.C., to represent her in this action and has agreed to pay said firm a reasonable attorney's fee for its services. Plaintiff has entered into a valid contract with Ross Law, P.C., and has appointed the undersigned counsel to be her sole agent, attorney-in-fact, and representative in this suit, exclusive of all other parties, including Plaintiff. To avoid tortious interference with Plaintiff's obligations to his attorneys in this suit, all communications concerning this suit must be made by Defendant and Defendant's attorneys solely to and through the undersigned counsel. Plaintiff's contract with an representation by the undersigned attorney gives rise to a claim for reasonable and necessary attorney's fees that Plaintiff is entitled to collect against Defendant pursuant to 29 U. S. C. § 216(b).

## COUNT I
## (OVERTIME)

04/04/2016  15:11    2106594277                        MASTERS                                    PAGE  09/14

23.    Plaintiff realleges and incorporates herein the allegations contained in
Paragraphs 1 through 22 above.

24.    Throughout the employment of Plaintiff, and others similarly situated,
Defendant repeatedly and willfully violated Sections 7 and 15 of the Fair Labor
Standards Act by failing to compensate Plaintiff, and all others similarly situated, at
a rate not less than one and one-half times their regular rate of pay for each hour
worked in excess of 40 in a workweek.

25.    Defendant failed to include pay Plaintiffs any overtime compensation.

26.    The acts described herein the preceding paragraph violate the Fair
Labor Standards Act, which prohibits the denial of overtime compensation for
hours worked in excess of forty (40) per workweek.

27.    As a result of Defendant's unlawful conduct, Plaintiff is entitled to
actual and compensatory damages, including the amount of overtime which was
not paid and which should have been paid.

28.    Section 216(b) of the FLSA provides that any employer who violates
the statute shall be liable for unpaid overtime pay and an additional equal amount
as liquidated damages. Therefore, Plaintiff seeks an award of liquidated damages
in an equal amount as the amount of unpaid overtime pay.

Case 1:16-cv-00401  Document 1  Filed 03/23/16  Page 8 of 10

WHEREFORE, Plaintiff, ANGELA BIRKMAN, and all others similarly

situated, demand Judgment against Defendant, L.L.C., INC., d/b/a PERFECT 10

MEN'S CLUB, for the following:

    a.    Determining that the action is properly maintained as a class and/or collective action, certifying Plaintiff as the class representative, and appointing Plaintiff's counsel as counsel for Class Members;

    b.    Ordering prompt notice of this litigation to all potential Class Members;

    c.    Awarding Plaintiff and Class Members declaratory and/or injunctive relief as permitted by law or equity;

    d.    Awarding Plaintiff and Class Members their compensatory damages, service awards, attorneys' fees and litigation expenses as provided by law;

    e.    Awarding Plaintiff and Class Members their pre-judgment, moratory interest as provided by law, should liquidated damages not be awarded;

    f.    Awarding Plaintiff and Class Members liquidated damages and/or statutory penalties as provided by law;

    g.    Awarding Plaintiff and Class Members such other and further relief as the Court deems just and proper.

## COUNT II
## (MINIMUM WAGE)

29.    Plaintiff realleges and incorporates herein the allegations contained in

Paragraphs 1 through 22 above.

    30.    The acts described in the preceding paragraphs violate the Fair Labor

Case 1:16-cv-00401   Document 1   Filed 03/23/16   Page 9 of 10

Standards Act, which prohibits the denial of minimum wage compensation for all
hours worked in a workweek.

31.    As a result of Defendants' unlawful conduct, Plaintiff is entitled to
actual and compensatory damages, including the amount of minimum wage
compensation which was not paid and which should have been paid.

32.    Section 216(b) of the FLSA provides that any employer who violates
the statute shall be liable for unpaid minimum wages pay and an additional equal
amount as liquidated damages. Therefore, Plaintiff seeks an award of liquidated
damages in an equal amount as the amount of unpaid minimum wages.

WHEREFORE, Plaintiff, ANGELA BIRKMAN, and all others similarly
situated, demand Judgment against Defendant, L.L.C., INC., d/b/a PERFECT 10
MEN'S CLUB, for the following:

- a.    Determining that the action is properly maintained as a class and/or
  collective action, certifying Plaintiff as the class representative, and
  appointing Plaintiff's counsel as counsel for Class Members;

- b.    Ordering prompt notice of this litigation to all potential Class Members;

- c.    Awarding Plaintiff and Class Members declaratory and/or injunctive
  relief as permitted by law or equity;

- d.    Awarding Plaintiff and Class Members their compensatory damages,
  service awards, attorneys' fees and litigation expenses as provided by
  law;

- e.    Awarding Plaintiff and Class Members their pre-judgment, moratory

Page 10 of  10
interest as provided by law, should liquidated damages not be awarded;

f.    Awarding Plaintiff and Class Members liquidated damages and/or
      statutory penalties as provided by law;

g.    Awarding Plaintiff and Class Members such other and further relief as
      the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff, ANGELA BIRKMAN, and others similarly situated, demands a jury

trial on all issues so triable.

Respectfully submitted this March 23, 2016.

**ROSS LAW GROUP**
1104 San Antonio Street
Austin, Texas 78701
(512) 474-7677 Telephone
(512) 474-5306 Facsimile
Charles@rosslawpc.com

**CHARLES L. SCALISE**
Texas Bar No. 24064621
**DANIEL B. ROSS**
Texas Bar No. 789810
**ATTORNEYS FOR PLAINTIFF**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

ANGELA BIRKMAN,

      Plaintiff,

v.                                    C.A. No.:   1:16-cv-401

L.L.C., INC., d/b/a PERFECT 10 MEN'S CLUB,

      Defendant.

_____/

### CERTIFICATE OF INTERESTED PERSONS

      Pursuant to Fed. R. Civ. P. 7.1 and LR 3.1(c), LR 3.2(e), LR 7.4, LR 81.1(a)(3)(D), and LR 81.2, Plaintiff, ANGELA BIRKMAN, provides the following information:

      For a nongovernmental corporate party, the name(s) of its parent corporation and any publicly held corporation that owns 10% or more of its stock (if none, state "None"):

*None.*

      A complete list of all persons, associations of persons, firms, partnerships, corporations, guarantors, insurers, affiliates, parent or subsidiary corporations, or other legal entities that are financially interested in the outcome of the case:

ANGELA BIRKMAN, Plaintiff
CHARLES L. SCALISE, ESQ., DANIEL B. ROSS, ESQ., ROSS LAW GROUP, Attorneys for Plaintiff
L.L.C., INC., d/b/a PERFECT 10 MEN'S CLUB, Defendant

      Respectfully submitted March 23, 2016.

### ROSS LAW GROUP

**CHARLES L. SCALISE**
Texas Bar No. 24064621
Attorney-in-Charge
**DANIEL B. ROSS**
Texas Bar No. 00789810
1104 San Antonio Street
Austin, Texas 78701
(512) 474-7677 Telephone
(512) 474-5306 Facsimile
Charles@rosslawgroup.com
Attorneys for Plaintiff

2042 Monroe

## INDEPENDENT CONTRACTOR/ENTERTAINER AGREEMENT

8-25 This Independent Contractor Agreement (this "Agreement") is entered into this ___ day of _____ 20___ by and between the undersigned ("Independent Contractor or Entertainer"), an individual, and L.L.C., Inc. d/b/a Perfect 10 Men's Club ("Operator"). In consideration of the mutual promises expressed herein, including Independent Contractor's access to Operator's premises for purposes of Independent Contractor's operations, Independent Contractor and Operator have agreed to the following terms and conditions.

1.     EFFECTIVE DATE. This Agreement will be effective as of the date signed by the Operator's authorized representative.

2.     SCOPE OF CONTRACTUAL RELATIONSHIP. Independent Contractor (also referred to as "Entertainer") desires and intends to provide exotic dancing entertainment at Perfect 10 Men's Club in accordance with the following terms and conditions of this Agreement:

a.     Entertainer must work entire shift (shift starts when ready and ends at 7pm dayshift or closing nightshift if you arrive after 7pm, you may leave early with manager approval or with pre-arrangement) and pay posted fees for arrival times. We do not schedule entertainers but may request entertainers to voluntarily commit to working some shifts. All entertainers must honor announced dance specials. Entertainer may not ask for more than $20 per song (service charge) for lap dances during regular rate times. If a customer wants to tip more it is their prerogative. Entertainer may not charge for time. If a customer tips for time it is his choice. Entertainer is solely responsible for her payment after every song or dance. Stacking dances is not allowed.

b.     Entertainer must dress appropriately and within the guidelines or announced theme for that shift. Buttocks and breasts should always be covered when not performing on stage or doing lap dances. Tips must be received appropriately (by hand or on sides of T-backs). Lap dances should have little or no contact. Touching oneself or a customer inappropriately is not allowed. Operator shall determine appropriateness or inappropriateness.

c.     Independent Contractor agrees and promises that she will NOT:

i)     be or become intoxicated while at or in Perfect 10;

ii)    come to work under the influence of alcohol or illegal drugs;

iii)   will not use, consume, or possess alcohol if Independent Contractor is under 21 years of age;

iv)    use or possess any contained substances, illegal substances, or contraband while at or in Perfect 10; or

v)     engage in any illegal or criminal acts including, but not limited to, prostitution while at Perfect 10.

vi)    leave without checking out with manager

d.     Independent Contractor agrees that he or she will abide by all of Operator's policies and procedures as may be adopted and modified by Operator from time to time.

3.     NO EMPLOYER/EMPLOYEE RELATIONSHIP.     All parties agree that Independent Contractor/Entertainer is NOT AN EMPLOYEE of Operator and there is NO EMPLOYMENT RELATIONSHIP between Operator and Independent Contractor/Contractor.     Independent Contractor/Entertainer agrees and stipulates that L.L.C./Perfect 10 will not compensate Independent Contractor/Entertainer in wages, salaries, benefits, or other compensation, and that L.L.C./Perfect 10 has no responsibility or liability for federal income tax withholding, FICA, or overtime.

4.     AT-WILL CONTRACTUAL RELATIONSHIP AND TERMINATION. Independent Contractor agrees that Operator shall have the right to terminate this Agreement at any time, without notice, and without cause.

5.     ACKNOWLEDGEMENT AND ACCEPTANCE OF SEXUAL CONTENT OF WORKPLACE. The

Entertainer Initials

1

EMPLOYEE IS MADE A MEMBER OF A CLASS IN ANY PROCEEDING, HE/SHE WILL "OPT OUT" AT THE FIRST OPPORTUNITY, AND SHOULD ANY THIRD PARTY PURSUE ANY CLAIMS ON HIS/HER BEHALF ENTERTAINER OR EMPLOYEE SHALL WAIVE HIS/HER RIGHTS TO ANY SUCH MONETARY RECOVERY.

ALL PORTIONS OF THIS AGREEMENT SURVIVE TERMINATION OF THIS AGREEMENT OR EMPLOYMENT.

EACH PARTY SHALL SPLIT ALL EXPENSES OF ARBITRATION (INCLUDING BUT NOT LIMITED TO, ARBITRATORS FEES, FILING FEES AND ADMINISTRATIVE FEES).

8.    ATTORNEY'S FEES. If any action, suit, or other proceeding is instituted concerning or arising out of this Agreement or any action contemplated hereunder, the prevailing party shall recover all of such party's reasonable costs and attorneys' fees incurred in such action, suit, or other proceeding, including any and all appeals or petitions therefrom.

9.    MERGER. This Agreement embodies the entire agreement between the Operator and Independent Contractor regarding the subject matter addressed herein and supersedes all prior agreements and understandings, if any, between the parties regarding such matters. There are no verbal, oral, or other agreements, understandings, or promises except as expressly stated and expressed herein.

10.    MODIFICATION. Both parties agree that neither party has the authority to modify or amend this Agreement unless the modification or amendment is in writing and signed by both parties. This Agreement cannot be modified except in writing signed by both parties.

11.    WAIVER. Any waiver of any term of this Agreement by either party shall not operate as a waiver of any other term of this Agreement, nor shall any failure to enforce any provision of this Agreement operate as a waiver of such party's right to enforce any other provision of this Agreement.

IN WITNESS WHEREOF, Independent Contractor and Operator have executed this Agreement on the date indicated.

OPERATOR:                                                     INDEPENDENT CONTRACTOR/ENTERTAINER:

By: _____        By: _____
Signature of Authorized Representative              Signature of Entertainer

Aaron Fawcett                                                    ANGELA Birkman

---

business of the Operator includes an atmosphere that is directed, in part, to prurient interests, and that entail strong sexual content and which are sexually graphic. In accepting and agreeing to employment with the Operator, the Independent Contractor acknowledges and agrees that he or she is aware of the sexual nature of the Operator's business and that the Independent Contractor agrees and stipulates that he or she accepts the Operator's business as non-offensive to the Independent Contractor. The Independent Contractor further agrees and stipulates that he or she understands and accepts that the Operator's business and work place entails strong and graphic sexual content and material, and that the Independent Contractor does not and will not subsequently claim that he or she have been exposed to sexually offensive content or prurient matters by reason of the business of the Operator or by reason of Independent Contractor's presence within the Operator's workplace.

6.    NO RESPONSIBILITY FOR PREMISES LIABILITY. Independent Contractor/Entertainer agrees and stipulates that she is a "business invitee" and has inspected and is familiar with the condition of the Perfect 10 premises, including all potentially dangerous conditions. Independent Contractor/Entertainer fully accepts all risks of personal injury, and agrees to indemnify and hold L.L.C., Inc./Perfect 10 harmless from any and all claims or liability for personal injury.

7.    ARBITRATION. ARBITRATION/CLASS ACTION AGREEMENT:
1. Governing Law. This Agreement shall be interpreted pursuant to the laws of the State of Texas.
2. Arbitration/Waiver of Class and Collective Actions/Attorney Fees and Costs.

A. ANY CONTROVERSY, DISPUTE, OR CLAIM ARISING OUT OF ENTERTAINER OR EMPLOYEE WORKING OR PERFORMING AT THE CLUB LLC, Inc., WHETHER CONTRACTUAL, IN TORT, OR BASED UPON COMMON LAW OR STATUTE, SHALL BE EXCLUSIVELY DECIDED BY BINDING ARBITRATION HELD PURSUANT TO THE FEDERAL ARBITRATION ACT (the "FAA"), AND SHALL BE ADMINISTERED BY A NEUTRAL ARBITRATOR AGREED UPON BY THE PARTIES, WHO SHALL BE PERMITTED TO AWARD ANY RELIEF AVAILABLE IN A COURT. THE PARTIES WAIVE ANY RIGHT TO LITIGATE SUCH CONTROVERSIES, DISPUTES, OR CLAIMS IN A COURT OF LAW, AND WAIVE THE RIGHT TO TRIAL BY JURY. IN ARBITRATION, ALL PARTIES SHALL HAVE THE RIGHT TO BE REPRESENTED BY LEGAL COUNSEL. THE ARBITRATOR SHALL PERMIT REASONABLE DISCOVERY, THE PARTIES SHALL HAVE THE RIGHT TO SUBPOENA WITNESSES IN ORDER TO COMPEL THEIR ATTENDANCE AT HEARING AND TO CROSS-EXAMINE WITNESSES, THE PROCEEDINGS SHALL BE CONDUCTED IN ACCORDANCE WITH RUDIMENTARY DUE PROCESS, AND THE ARBITRATOR'S DECISION SHALL BE IN WRITING AND SHALL CONTAIN FINDINGS OF FACT AND CONCLUSIONS OF LAW. THE ARBITRATOR'S DECISION SHALL BE FINAL, SUBJECT ONLY TO REVIEW UNDER THE FAA. FOR ANY CLAIMS BASED UPON STATUTORY PROTECTIONS, THE CLUB SHALL PAY ALL FEES CHARGED BY THE NEUTRAL ARBITRATOR. THE ARBITRATOR SHALL HAVE EXCLUSIVE AUTHORITY TO RESOLVE ANY AND ALL DISPUTES OVER THE VALIDITY AND/OR ENFORCEABILITY OF ANY PART OF THIS AGREEMENT, INCLUDING THE PROVISIONS IN THIS SUBPARAGRAPH TO ARBITRATE ANY AND ALL CLAIMS. ANY AWARD BY THE ARBITRATOR MAY BE ENTERED AS A JUDGMENT IN ANY COURT HAVING JURISDICTION.

B. ANY JUDGMENT, ORDER, OR RULING ARISING OUT OF A CLAIM BETWEEN THE PARTIES SHALL, TO THE EXTENT PERMITTED BY APPLICABLE LAW, AWARD COSTS INCURRED FOR THE PROCEEDINGS AND REASONABLE ATTORNEY FEES TO THE PREVAILING PARTY.

C. ENTERTAINER OR EMPLOYEE AGREES THAT ALL CLAIMS BETWEEN HIM/HER AND THE CLUB (AND ANY OTHER PERSONS OR ENTITIES ASSOCIATED WITH THE CLUB) WILL BE LITIGATED INDIVIDUALLY; THAT HE/SHE WILL NOT CONSOLIDATE HER CLAIMS WITH THE CLAIMS OF ANY OTHER INDIVIDUAL; THAT THEY WILL NOT SEEK CLASS OR COLLECTIVE ACTION TREATMENT FOR ANY CLAIM THAT HE/SHE MAY HAVE; AND THAT HE/SHE WILL NOT PARTICIPATE IN ANY CLASS OR COLLECTIVE ACTION AGAINST THE CLUB OR AGAINST ANY PERSONS OR ENTITIES ASSOCIATED WITH THE CLUB. IF AT ANY TIME ENTERTAINER OR

Entertainer Initials

# INDEPENDENT CONTRACTOR/ENTERTAINER AGREEMENT

10-10   This Independent Contractor Agreement (this "Agreement") is entered into this __ day of __ 20(3), by and between the undersigned ("Independent Contractor or Entertainer"), an individual, and L.L.C., Inc. d/b/a Perfect 10 Men's Club ("Operator"). In consideration of the mutual promises expressed herein, including Independent Contractor's access to Operator's premises for purposes of Independent Contractor's operations, Independent Contractor and Operator have agreed to the following terms and conditions.

1.   EFFECTIVE DATE. This Agreement will be effective as of the date signed by the Operator's authorized representative.

2.   SCOPE OF CONTRACTUAL RELATIONSHIP. Independent Contractor (also referred to as "Entertainer") desires and intends to provide exotic dancing entertainment at Perfect 10 Men's Club in accordance with the following terms and conditions of this Agreement:

a.   Entertainer must work entire shift (shift starts when ready and ends at 7pm dayshift or closing nightshift if you arrive after 7pm, you may leave early with manager approval or with pre-arrangement) and pay posted fees for arrival times. We do not schedule entertainers but may request entertainers to voluntarily commit to working some shifts. All entertainers must honor announced dance specials. Entertainer may not ask for more than $20 per song (service charge) for lap dances during regular rate times. If a customer wants to tip more it is their prerogative. Entertainer may not charge for time. If a customer tips for time it is his choice. Entertainer is solely responsible for her payment after every song or dance. Stacking dances is not allowed.

b.   Entertainer must dress appropriately and within the guidelines or announced theme for that shift. Buttocks and breasts should always be covered when not performing on stage or doing lap dances. Tips must be received appropriately (by hand or on sides of T-backs). Lap dances should have little or no contact. Touching oneself or a customer inappropriately is not allowed. Operator shall determine appropriateness or inappropriateness.

c.   Independent Contractor agrees and promises that she will NOT:

i)   be or become intoxicated while at or in Perfect 10;

ii).   come to work under the influence of alcohol or illegal drugs;

iii)   will not use, consume, or possess alcohol if Independent Contractor is under 21 years of age;

iv)   use or possess any contained substances, illegal substances, or contraband while at or in Perfect 10; or

v)   engage in any illegal or criminal acts including, but not limited to, prostitution while at Perfect 10.

vi)   leave without checking out with manager

d.   Independent Contractor agrees that he or she will abide by all of Operator's policies and procedures as may be adopted and modified by Operator from time to time.

3.   NO EMPLOYER/EMPLOYEE RELATIONSHIP. All parties agree that Independent Contractor/Entertainer is NOT AN EMPLOYEE of Operator and there is NO EMPLOYMENT RELATIONSHIP between Operator and Independent Contractor/Contractor. Independent Contractor/Entertainer agrees and stipulates that L.L.C./Perfect 10 will not compensate Independent Contractor/Entertainer in wages, salaries, benefits, or other compensation, and that L.L.C./Perfect 10 has no responsibility or liability for federal income tax withholding, FICA, or overtime.

4.   AT-WILL CONTRACTUAL RELATIONSHIP AND TERMINATION. Independent Contractor agrees that Operator shall have the right to terminate this Agreement at any time, without notice, and without cause.

5.   ACKNOWLEDGEMENT AND ACCEPTANCE OF SEXUAL CONTENT OF WORKPLACE. The business of the Operator includes an atmosphere that is directed, in part, to prurient interests, and that entail strong sexual content and which are sexually graphic. In accepting and agreeing to employment with the Operator, the Independent Contractor acknowledges and agrees that he or she is aware of the sexual nature of the Operator's business and that the Independent Contractor agrees and stipulates that he or she accepts the Operator's business as non-offensive to the Independent Contractor. The Independent Contractor further agrees and stipulates that he or she understands and accepts that the Operator's business and work place

entails strong and graphic sexual content and material, and that the Independent Contractor does not and will not subsequently claim that he or she have been exposed to sexually offensive content or prurient matters by reason of the business of the Operator or by reason of Independent Contractor's presence within the Operator's workplace.

6.     NO RESPONSIBILITY FOR PREMISES LIABILITY. Independent Contractor/Entertainer agrees and stipulates that she is a "business invitee" and has inspected and is familiar with the condition of the Perfect 10 premises, including all potentially dangerous conditions. Independent Contractor/Entertainer fully accepts all risks of personal injury, and agrees to indemnify and hold L.L.C., Inc./Perfect 10 harmless from any and all claims or liability for personal injury.

7.     ARBITRATION. ARBITRATION/CLASS ACTION AGREEMENT:

1.. Governing Law. This Agreement shall be interpreted pursuant to the laws of the State of Texas.

2. Arbitration/Waiver of Class and Collective Actions/Attorney Fees and Costs.

A. ANY CONTROVERSY, DISPUTE, OR CLAIM ARISING OUT OF ENTERTAINER OR EMPLOYEE WORKING OR PERFORMING AT THE CLUB LLC, Inc., WHETHER CONTRACTUAL, IN TORT, OR BASED UPON COMMON LAW OR STATUTE, SHALL BE EXCLUSIVELY DECIDED BY BINDING ARBITRATION HELD PURSUANT TO THE FEDERAL ARBITRATION ACT (the "FAA"), AND SHALL BE ADMINISTERED BY A NEUTRAL ARBITRATOR AGREED UPON BY THE PARTIES, WHO SHALL BE PERMITTED TO AWARD ANY RELIEF AVAILABLE IN A COURT. THE PARTIES WAIVE ANY RIGHT TO LITIGATE SUCH CONTROVERSIES, DISPUTES, OR CLAIMS IN A COURT OF LAW, AND WAIVE THE RIGHT TO TRIAL BY JURY. IN ARBITRATION, ALL PARTIES SHALL HAVE THE RIGHT TO BE REPRESENTED BY LEGAL COUNSEL, THE ARBITRATOR SHALL PERMIT REASONABLE DISCOVERY, THE PARTIES SHALL HAVE THE RIGHT TO SUBPOENA WITNESSES IN ORDER TO COMPEL THEIR ATTENDANCE AT HEARING AND TO CROSS-EXAMINE WITNESSES, THE PROCEEDINGS SHALL BE CONDUCTED IN ACCORDANCE WITH RUDIMENTARY DUE PROCESS, AND THE ARBITRATOR'S DECISION SHALL BE IN WRITING AND SHALL CONTAIN FINDINGS OF FACT AND CONCLUSIONS OF LAW. THE ARBITRATOR'S DECISION SHALL BE FINAL, SUBJECT ONLY TO REVIEW UNDER THE FAA. FOR ANY CLAIMS BASED UPON STATUTORY PROTECTIONS, THE CLUB SHALL PAY ALL FEES CHARGED BY THE NEUTRAL ARBITRATOR. THE ARBITRATOR SHALL HAVE EXCLUSIVE AUTHORITY TO RESOLVE ANY AND ALL DISPUTES OVER THE VALIDITY AND/OR ENFORCEABILITY OF ANY PART OF THIS AGREEMENT, INCLUDING THE PROVISIONS IN THIS SUBPARAGRAPH TO ARBITRATE ANY AND ALL CLAIMS. ANY AWARD BY THE ARBITRATOR MAY BE ENTERED AS A JUDGMENT IN ANY COURT HAVING JURISDICTION.

B. ANY JUDGMENT, ORDER, OR RULING ARISING OUT OF A CLAIM BETWEEN THE PARTIES SHALL, TO THE EXTENT PERMITTED BY APPLICABLE LAW, AWARD COSTS INCURRED FOR THE PROCEEDINGS AND REASONABLE ATTORNEY FEES TO THE PREVAILING PARTY.

C. ENTERTAINER OR EMPLOYEE AGREES THAT ALL CLAIMS BETWEEN HIM/HER AND THE CLUB (AND ANY OTHER PERSONS OR ENTITIES ASSOCIATED WITH THE CLUB) WILL BE LITIGATED INDIVIDUALLY; THAT HE/SHE WILL NOT CONSOLIDATE HER CLAIMS WITH THE CLAIMS OF ANY OTHER INDIVIDUAL; THAT THEY WILL NOT SEEK CLASS OR COLLECTIVE ACTION TREATMENT FOR ANY CLAIM THAT HE/SHE MAY HAVE; AND THAT HE/SHE WILL NOT PARTICIPATE IN ANY CLASS OR COLLECTIVE ACTION AGAINST THE CLUB OR AGAINST ANY PERSONS OR ENTITIES ASSOCIATED WITH THE CLUB. IF AT ANY TIME ENTERTAINER OR EMPLOYEE IS MADE A MEMBER OF A CLASS IN ANY PROCEEDING, HE/SHE WILL "OPT OUT" AT THE FIRST OPPORTUNITY, AND SHOULD ANY THIRD PARTY PURSUE ANY CLAIMS ON HIS/HER BEHALF ENTERTAINER OR EMPLOYEE SHALL WAIVE HIS/HER RIGHTS TO ANY SUCH MONETARY RECOVERY.

ALL PORTIONS OF THIS AGREEMENT SURVIVE TERMINATION OF THIS AGREEMENT OR EMPLOYMENT.

8.     ATTORNEY'S FEES. If any action, suit, or other proceeding is instituted concerning or arising out of this Agreement or any action contemplated hereunder, the prevailing party shall recover all of such

2

party's reasonable costs and attorneys' fees incurred in such action, suit, or other proceeding, including any and all appeals or petitions therefrom.

9.     MERGER.   This Agreement embodies the entire agreement between the Operator and Independent Contractor regarding the subject matter addressed herein and supersedes all prior agreements and understandings, if any, between the parties regarding such matters.  There are no verbal, oral, or other agreements, understandings, or promises except as expressly stated and expressed herein.

10.     MODIFICATION.  Both parties agree that neither party has the authority to modify or amend this Agreement unless the modification or amendment is in writing and signed by both parties.  This Agreement cannot be modified except in writing signed by both parties.

11.     WAIVER.  Any waiver of any term of this Agreement by either party shall not operate as a waiver of any other term of this Agreement, nor shall any failure to enforce any provision of this Agreement operate as a waiver of such party's right to enforce any other provision of this Agreement.

IN WITNESS WHEREOF, Independent Contractor and Operator have executed this Agreement on the date indicated.

OPERATOR:

By: _____
Signature of Authorized Representative

_____
Printed Name of Representative

INDEPENDENT CONTRACTOR/ENTERTAINER:

By: _____
Signature of Entertainer

_____
Printed Name of Entertainer

3